UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 1:18-cr-00335-DCN |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| PAMELA LEE, | |
| Defendant. | |

## I. INTRODUCTION

Pending before the Court is Defendant Pamela Lee's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 62. The Government has filed an opposition to Lee's Motion. Dkt. 65. Lee filed a reply. Dkt. 66. The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

On December 11, 2019, after pleading guilty to conspiracy to distribute methamphetamine, the Court sentenced Lee to ninety-seven months of incarceration with

five years of supervised release to follow. Dkt. 65. Lee is currently incarcerated at Federal Correctional Institution Dublin ("FCI Dublin") and, at the time she filed her Motion, had served approximately twenty months of her sentence. Dkt. 62-1.

In April 2020, Lee petitioned FCI Dublin's Warden for Compassionate Release. Dkt. 62-1. Because no action was taken by the Bureau of Prisons (BOP), Lee subsequently filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) with the Court, centering the Motion on her multiple health concerns coupled with the possibility of contracting a severe form of COVID-19. *Id*. at 2.

### III. LEGAL STANDARD

Lee seeks compassionate release under the First Step Act's ("FSA") newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[1] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[2] *Id*. If the latter

---

[1] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[2] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered

MEMORANDUM DECISION AND ORDER - 2

criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id.*; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Lee submitted a request for Compassionate Release with the Warden on April 17, 2020, to which the BPO did not respond. Dkt. 62-1. Because Lee's present motion was filed after a lapse of 30 days from the time the Warden received Lee's request, the Court finds that she has exhausted her administrative remedies.

### B. Extraordinary and Compelling Reasons

Having determined that Lee exhausted her administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in Lee's sentence and whether "such a reduction is consistent with applicable

---

extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Lee bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. 2020). The Court finds that she has not.

Before Congress enacted the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). Because the FSA allows defendants to seek relief directly from the court, the discrepancy between the FSA and Sentencing Commission's policy statements "leaves district courts in a conundrum." *Id*. (explaining that Congress now allows district courts to grant petitions "consistent with the applicable policy statements" from the Sentencing Commission, although the Sentencing Commission "has not made the policy statements for the old regime applicable to the new one").

A growing number of district courts have concluded that, in the absence of

applicable policy statements, courts "can determine whether any extraordinary and compelling reasons other than those delineated in [U.S.S.G. § 1B1.13] warrant compassionate release." *Rodriguez*, 411 F. Supp. 3d at 682 (collecting cases). However, other courts have concluded that "a judge may not stray beyond the specific instances listed in [U.S.S.G. § 1B1.13]." *Mondaca*, 2020 WL 1029024, at *3 (citations omitted); *see also United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (stating U.S.S.G. § 1B1.13's descriptions of extraordinary and compelling reasons "remain current, even if references to the identity of the moving party are not").

The Court need not decide the issue, however, because Lee points to one of the specific scenarios set out in the Sentencing Commission's policy statements applicable to this situation. *Brown*, 411 F. Supp. 3d at 451 (district courts "still must act in harmony with any sentencing policy guidelines that remain applicable and the § 3553(a) factors"). Specifically, Lee seeks compassionate release under the "medical condition" scenario in subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.[3] Lee argues that her underlying comorbidities—particularly Hypertension, kidney problems, and a history of smoking—along with the nature of her being incarcerated,[4] make contracting COVID-19 particularly

---

[3] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

    (A)    Medical Condition of the Defendant.—
    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

[4] Including difficulty social distancing, limited access to health care, and a lack of personal cleaning supplies or masks.

lethal to her. Dkt. 62-1, at 12–13. However, as the Government noted, while Lee may have "shown that she has conditions that *may* increase her risk if she contracts the novel coronavirus, [] she has not shown that her conditions will do so." Dkt. 65, at 5.

Without downplaying Lee's medical conditions, the Court is not persuaded that her Hypertension, kidney problems, or history of smoking, coupled with the potential of contracting COVID-19, are extraordinary or compelling reasons for granting her Motion. This conclusion is further bolstered by the fact that, in the ten months that have passed since she filed her Motion, Lee has not contracted COVID-19—even during its peak.[5] While Lee's Motion heralded impending danger, such prognostication has not come to pass. When Lee filed her Motion, FCI Dublin only had one confirmed active COVID-19 case among inmates (Dkt. 62-1, at 1) and two active staff cases (Dkt. 65, at 3). Today, almost a year later, notwithstanding a peak in cases last December, FCI Dublin still only reports one active case of COVID-19, along with two cases among the staff.[6] More than that, through the BOP's systematic vaccination regimen, 171 staff members and 510 inmates at FCI Dublin have been fully vaccinated.[7] The Court is not aware of Lee's vaccination status. Still, based on the BOP's data, it seems clear that an inmate such as Lee could easily receive the vaccination, thus eliminating the potential danger COVID-19 poses

---

[5] Overall, 240 inmates and 21 staff have recovered from COVID-19 at FCI Dublin. *Coronavirus*, FEDERAL BUREAU OF PRISONS (last accessed May 20, 2021), https://www.bop.gov/coronavirus/. FCI Dublin only peak in cases occurred in December 2020. Michael Williams, *Coronavirus outbreak infects 20% of East Bay women's prison*, S.F. CHRON. (Dec. 23, 2020), https://www.sfchronicle.com/bayarea/article/Coronavirus-outbreak-infects-20-of-East-Bay-15825744.php.

[6] FEDERAL BUREAU OF PRISONS, *supra* note 5.
[7] *Id*.

MEMORANDUM DECISION AND ORDER - 6

for her. As such, Lee has not met her burden of demonstrating extraordinary and compelling reasons for her release.[8]

Additionally, there is no evidence suggesting that Lee would be at less risk of contracting the virus if she were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less exposed to the pandemic by remaining in prison. *See, e.g.*, *United States v. Wright*, 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 20, 2020) (denying motion for inmate with diabetes, noting, it appears "the BOP has been successful at limiting the spread of the virus within the MCC . . . despite the close proximity of inmates, the BOP is able to impose restrictions on visitors and restrictions on internal movements that are more difficult to impose outside prison walls. There is no reason to believe at this juncture that [defendant] would be at any less of a risk from contracting COVID-19 if he were to be released.").

Only 67 of the total 128,793 federal inmates within the 122 separate BOP-managed institutions are currently testing positive for COVID-19.[9] Additionally, BOP has administered 176,976 doses of the COVID-19 vaccine to inmates and staff.[10] *Id*. Conversely, Ada County, the area where Lee would reside if released, has reported 629 new cases of COVID-19 in the last two weeks alone and is considered a high-risk

---

[8] Lee makes additional Eight Amendment arguments, but the cited cases are unanalogous to the present situation involving an ongoing—and abating—global pandemic.

[9] *Id*.

[10] *Id*.

transmission area for unvaccinated people.[11] Considering the low level of COVID cases across the entirety of BOP institutions, the Court cannot find that Lee would be at less risk if released into the community.

Finally, the Government asserts there are compelling reasons not to release Lee. The Government argues that the 18 U.S.C. § 3553(a) factors weigh against Lee's release.[12] In particular, the Government asserts that Lee would still pose a danger to public safety if released. Dkt. 65. Lee has only served around 30% of her 97-month sentence, and the Government argues that her criminal history and characteristics warrant a longer sentence. Dkt. 65, at 6. The Government's arguments here are persuasive, but the Court need not determine if they alone would have been sufficient to deny the present motion given the lack of extraordinary and compelling reasons.

In sum, while Lee appropriately exhausted her administrative remedies, the Court

---

[11] *Tracking Coronavirus in Ada County, Idaho*, N.Y. TIMES (last accessed May 20, 2021), https://www.nytimes.com/interactive/2021/us/ada-idaho-covid-cases.html.

[12] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

finds she has not met her burden showing "extraordinary and compelling reasons" exist warranting her release. Accordingly, the Court must DENY Lee's Motion. 18 U.S.C. § 3582(C)(1)(A).

## V. ORDER

The Court HEREBY ORDERS:

1. Lee's Motion for Compassionate Release (Dkt. 62) is DENIED.

DATED: May 25, 2021

David C. Nye
Chief U.S. District Court Judge